UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| DEANDREA J. ROBINSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 1:10-CV-208 |
| v. | ) |
| | ) Chief Judge Curtis L. Collier |
| CAREFOCUS, INC., | ) |
| | ) |
| Defendant. | ) |

### MEMORANDUM

Plaintiff Deandrea Robinson ("Plaintiff") brings this lawsuit against her former employer Carefocus, Inc. ("Defendant"), alleging race and gender discrimination, race and gender harassment, and retaliation. Before the Court is Defendant's motion for summary judgment, which is supported by a memorandum (Court File Nos. 23, 26). Plaintiff filed a response (Court File No. 25), to which Defendant replied (Court File No. 30). For the reasons set forth below, the Court will **GRANT IN PART** and **DENY IN PART** Defendant's motion for summary judgment (Court File No. 23).

### I. RELEVANT FACTS

Plaintiff, an African-American female, began working for Defendant in September 2007 as an at-will employee and was terminated January 7, 2010. She was initially hired in a support staff position and after receiving two promotions, held the position of program coordinator at the time of her termination (Court File No. 25-3 ("Plaintiff Dep.") pp. 166-167, 214; Court File No. 26-2 ("Weiss Dep.") p. 58).[1] Defendant is a wholly-owned subsidiary of Maxim Healthcare Services

---

[1] The parties submitted different excerpts of many of the same depositions. For purposes of clarity, citations to depositions refer to the actual pages of the deposition transcript and not the various portions attached to the filings in the docket.

("Maxim"), and provides support services to individuals with developmental disabilities. These individuals, referred to as "clients," are otherwise unable to care for themselves and reside in group homes and private residences. Plaintiff's duties as a program coordinator included "staffing scheduling, making sure that the clients made it to their appointments, monthly summaries, [and] supervisor visits" (Plaintiff Dep. p. 167). Plaintiff did not begin to have any issues with her employment until January 2009 (Plaintiff Dep. p. 167). During the period from January 2009 until Plaintiff's termination in 2010, Emily Hill ("Hill"), Program Director, was Plaintiff's direct supervisor and Summer Weiss ("Weiss"), office administrator, indirectly supervised Plaintiff.

In January 2009, Hill grabbed Plaintiff's breast in a playful manner while Plaintiff was in the team leader office (Plaintiff Dep. at 63). Although Plaintiff admits laughing off the incident, she states she "was in shock" at the time (*id.*). Hill described Plaintiff as nervous due to the presence of auditors and explains she grabbed Plaintiff's breast as "jocular in nature[,]" an action that "would like-lighten the mood" and help Plaintiff relax (Court File No. 25-4 ("Hill Dep.") pp. 16-17). There was at least one other individual present during this incident. In a letter dated February 25, 2009, Plaintiff first complained of this incident and also described an occasion in Hill's office where Hill "pretended like she had gonads in her hands" to give to Plaintiff (Court File No. 25-3, Ex. 3). Hill admitted "I postured as if I was unzipping my pants. I held out my hand and I asked [Plaintiff] to hold out her hand, and I said, here are my cojones." (Hill Dep. p. 19). Hill explained she made this remark after an altercation with a client in which she felt "she should have had a more professional response than being so afraid" (*id.*). Plaintiff further complained that Hill used the camera on her cellular phone to videotape the buttocks of a coworker, Jamie Bomar ("Bomar")(Court File No. 25-3, Ex. 3).

2

Per instructions from Human Resources Generalist Sharon Smith ("Smith"), Plaintiff wrote the February 25, 2009 letter detailing Hill's conduct and gave it to Weiss (Plaintiff Dep. p. 63; Court File No. 25-3, Ex. 3). In response to Plaintiff's complaint, Defendant conducted an investigation and Laurice McCord,[2] counseled Hill regarding her behavior (Court File No. 26-1 ("McCord Dep.") pp. 37-41; Court File No. 25-5 ("Smith Dep.") pp. 16-20; Hill Dep. p. 24). There was no written warning issued to Hill and "the disciplinary action would have been to inform [Hill] of the unprofessional conduct and that it's not acceptable" (Smith Dep. p. 20). Hill made no further inappropriate sexual comments or advances toward Plaintiff (Plaintiff Dep. pp. 117, 151). Plaintiff, however, felt there was not a proper investigation of this matter because a witness Plaintiff identified, Donna Clark, was not contacted by Craig Kile, a corporate relations manager (Plaintiff Dep. pp. 55-56, Court File No. 26-3 ("Kile Dep.") p. 39).

In the late spring/early summer of 2009, McCord omitted both Plaintiff's and another program coordinator's name from a slide presentation used as part of orientation for new employees (McCord Dep. pp. 49-50). There were two program coordinators, Plaintiff and Susie Collins, a white female, and both names were left off the slide. This oversight was corrected once Plaintiff reported it, however, Plaintiff claims this omission may have undermined her position (Plaintiff Dep. pp. 130-132, 234-35**;** McCord Dep. p. 51; Weiss Dep. pp. 127-28).

Plaintiff was out of the office on vacation in June 2009 and during this time, other staff members learned of Plaintiff's complaint about Hill. Plaintiff alleges Hill treated her differently when she returned from vacation (Plaintiff Dep. p. 76). "Hill would turn her back when talking to me to communicate . . . you could just see by her body language" (*id.*). Plaintiff claims when she

---

[2] Laurice McCord was formerly known as Laurice Green.
3

Case 1:10-cv-00208-CLC-SKL   Document 38   Filed 07/08/11   Page 3 of 19   PageID #: 1265

confronted Hill about why she did not say good morning to her or Donna Clark, Hill responded "maybe because you're not white, that's why I'm not speaking" (*id.*). Hill also made comments to Plaintiff that she "was shaped like a white girl" and had a "white girl's ass" (Plaintiff Dep. p. 67). Also during this time, Plaintiff claims Weiss stated she did not think black people washed their hair (*id.* at 71). Plaintiff is not sure whether Weiss said this out of malice as Weiss seemed genuinely surprised Plaintiff had washed her hair (*id.*). Plaintiff testified that although Weiss never said anything, Plaintiff felt Weiss did not want to hear complaints from Plaintiff because Plaintiff was a black female (*id.* at 247).

Plaintiff testified that Bomar called her a "bitch" at one point and informed Plaintiff she hated Oprah Winfrey and President Obama (Plaintiff Dep. pp. 61-62, 142-43). On September 4, 2009, Plaintiff and Bomar had an altercation which resulted in Bomar throwing a pen at Plaintiff (Plaintiff Dep. pp. 58-61). Bomar was terminated the following day after Plaintiff reported the incident (*id.* at 58, Weiss Dep. pp. 75-76). Plaintiff testified she thinks Bomar threw the pen because Bomar "wanted to do [Plaintiff's] job" and Bomar "didn't like what [Plaintiff] had to say" (Plaintiff Dep. pp. 59-61). Plaintiff does not know if Bomar threw the pen because Plaintiff was black, but claims Bomar did not throw the pen because Plaintiff was a female (*id.* at 60).

Following the pen incident, Plaintiff took medical leave for twelve weeks from September to December 2009 (Plaintiff Dep. p. 168, Kile Dep. pp. 67-68). She was diagnosed as having depression, anxiety, chronic insomnia and post traumatic stress disorder (Court File No. 25-6 ("Dr. Johnson-Crum Dep.") pp. 15-18). Plaintiff wrote a six-page letter to McCord in early September 2009, complaining of unfair treatment - including being omitted from the orientation slides, the pen incident, and Hill's comment she would not speak to Plaintiff because she was "not white" (Kile

4

Dep. pp. 32-33; Court File No. 25-3, pp. 57-62). McCord forwarded Plaintiff's letter to Kile who initiated an investigation into Plaintiff's allegations (Kile Dep. pp. 32-33). Plaintiff also filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on October 7, 2009.

In Plaintiff's absence, other staff members created schedules for the clients, and staff and house managers were instructed to direct their concerns to Hill instead of Plaintiff (Plaintiff Dep. pp. 105-07; Hill Dep. 77-78; McCord Dep. pp. 75-76). When Plaintiff returned to work in December, she received a written warning from Hill for failing to coordinate a client's medical appointment (Hill Dep. pp. 57-59; Court File No. 26-6). Plaintiff was again disciplined on December 25, 2009, for failing to coordinate holiday schedules with clients (Plaintiff Dep. pp. 197-98; Court File No. 26-6). Plaintiff admits she failed to coordinate the holiday schedules (Plaintiff Dep. p. 202) but denies any fault for the missed medical appointment (Court File No. 25-3, p. 56). Instead, Plaintiff testified the client missed the medical appointment because another employee sent untrained staff to the client's house (Plaintiff Dep. p. 205).

After these two incidents, Hill informed Plaintiff she was resigning (Court File No. 25-4, p. 12). Hill asked Plaintiff to schedule medical appointments for clients but Plaintiff indicated in an email she was uncomfortable with this part of her job (Plaintiff Dep. pp. 205-212; Hill Dep. pp. 56-57; McCord Dep. pp. 110-111; Kile Dep. pp. 51-52). Scheduling medical appointments was one of the responsibilities Plaintiff held in her position as program coordinator (Plaintiff Dep. pp. 167, 208-09; Weiss Dep. pp. 46-47). In an email exchange between Plaintiff and Hill, Plaintiff indicates following the incident in December, she did not feel comfortable scheduling medical appointments and that she would not feel comfortable performing this task until Hill left (Court File No. 25-4, p. 8). On January 6, 2010, Hill forwarded this chain of email correspondence to both McCord and

Weiss, with the message "I consider this insubordination and hostility. Thoughts??????????????????" (*id.*). The chain of correspondence was then forwarded to Amick and Kile. Plaintiff also sent an email to McCord referring to her as a "hypocrite" and accusing McCord of playing Hill and Plaintiff against one another (Court File No. 26-6, p. 48; Plaintiff Dep. pp. 226-28). Plaintiff was terminated the next day.

Defendant claims it terminated Plaintiff's employment on January 7, 2010, because of Plaintiff's "refusal to do tasks" such as scheduling medical appointments and coordinating client schedules (Weiss Dep. pp. 5, 16). The Separation Notice cited "unsatisfactory performance" as the reason for Plaintiff's discharge (Court File No. 1-1, p. 11). According to Defendant, the decision to terminate Plaintiff was a collective decision involving McCord, Kile, Amick, Carrie Yonensen (in-house counsel with Maxim), and Jimmy Nichols (regional director of sales) (Weiss Dep. pp. 22, 25-28, 101-102; Kile Dep. pp. 67-68). Hill did not participate in the decision to terminate Plaintiff (Hill Dep. p. 27).

Plaintiff initiated this action on August 5, 2010, advancing claims of discrimination on the basis of race and sex, retaliatory discharge, and that she was subjected to a hostile work environment based on her race and/or sex. Defendant has moved for summary judgment on all claims.

## II. STANDARD OF REVIEW

Summary judgment is proper if the movant shows, based on the materials in the record, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). First, the moving party must demonstrate no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349

F.3d 888, 897 (6th Cir. 2003). The Court views the evidence, including all reasonable inferences, in the light most favorable to the non-movant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). However, the non-movant is not entitled to a trial based solely on its allegations, but must submit significant probative evidence to support its claims. *Celotex*, 477 U.S. at 324; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). Should the non-movant fail to provide evidence to support an essential element of its case, the movant can meet its burden of demonstrating no genuine issue of material fact exists by pointing out such failure to the court. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

The moving party is entitled to summary judgment if the non-movant fails to make a sufficient showing on an essential element for which it bears the burden of proof. *Celotex*, 477 U.S. at 323. In short, if the Court concludes a fair-minded jury could not return a verdict in favor of the non-movant based on the record, the Court may enter summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

**III.   ANALYSIS**

On the basis of the facts set out above, Plaintiff alleges she was unlawfully discriminated against and subjected to a hostile work environment on the basis of her race and sex, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq*. ("Title VII"), 42 U.S.C. § 1981 ("§ 1981"), and the Tennessee Human Rights Act, Tenn. Code Ann. §§ 4-21-101 *et seq*. ("THRA"). She further asserts claims of retaliation in violation of Title VII, the THRA, and

7

Tennessee Public Protection Act, Tenn. Code Ann. § 50-1-304 ("TPPA"). The Court will address each claim in turn.

### A. Race and Gender Discrimination

Claims for race or gender discrimination under Title VII may be established in one of two ways.[3] A plaintiff "may establish a prima facie case of discrimination either by presenting direct evidence of intentional discrimination by the defendant or by showing the existence of circumstantial evidence which creates an inference of discrimination." *Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1246 (6th Cir. 1995) (citations omitted). "The direct evidence and circumstantial paths are mutually exclusive; the plaintiff can meet her burden with either method of proof." *Weberg v. Franks*, 229 F.3d 514, 522-23 (6th Cir. 2000). Either way, a "plaintiff's burden with respect to establishing a prima facie case is not onerous." *Jackson v. RKO Bottlers of Toledo, Inc.*, 743 F.2d 370, 377 (6th Cir. 1984) (citation omitted).

Viewing the evidence in the light most favorable to Plaintiff, she has not presented any direct evidence she was discriminated against on account of her race or gender. "Direct evidence is the evidence that proves the existence of a fact without requiring any inferences." *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 548 (6th Cir. 2004). Direct evidence would be comparable to Defendant's statements Plaintiff is being terminated because of her race or gender. *See Smith v. Chrysler Corp.*, 155 F.3d 799, 805 (6th Cir. 1998) ("Such evidence would take the form, for example, of an employer telling an employee, 'I fired you because you are disabled.'"). Plaintiff alleges certain comments made by Hill - such as telling Plaintiff she was "shaped like a white girl"

---

[3] Discrimination claims brought under the THRA and § 1981 are evaluated under the same analytical framework and federal case law that applies to claims brought pursuant to Title VII. *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 464 (6th Cir. 2001).

or that maybe she wasn't speaking to Plaintiff because Plaintiff was black. Hill's statements may demonstrate a racial bias, however, an inference is required to connect them to the decision to end Plaintiff's employment. Accordingly, Plaintiff has not put forth direct evidence of discrimination.

A circumstantial racial discrimination claim is evaluated using the familiar burden-shifting approach established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and refined by *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981). Under the *McDonnell Douglas* framework, the plaintiff carries the initial burden of establishing a prima facie case of discrimination. *Vaughn v. Watkins Motor Lines, Inc.*, 291 F.3d 900, 906 (6th Cir. 2002). To establish a prima facie case of race or gender discrimination, the plaintiff must demonstrate (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the job; and (4) her employer treated similarly situated employees outside the protected class more favorably, or her position was filled with a person outside of her protected class. *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 707 (6th Cir. 2006).

Once Plaintiff establishes a prima facie case, the burden then shifts to the employer to articulate some legitimate, non-discriminatory explanation for its actions. Finally, the burden shifts back to the plaintiff to demonstrate the employer's explanation was pretext. *McDonnell Douglas*, 411 U.S. at 802-804, 807. Throughout this burden shifting, "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000); *DiCarlo v. Potter*, 358 F.3d 408, 414-415 (6th Cir. 2004). The plaintiff cannot rely purely on "mere personal belief, conjecture and speculation" as they are insufficient to support an inference of discrimination. *Woythal v. Tex-Tenn Corp.*, 112 F.3d 243, 247 (6th Cir. 1997).

9

Plaintiff has not established a prima facie case for either gender or race discrimination. She is a black female who suffered the adverse employment action of termination, and was qualified for the position, however, there are no facts in the record to support the fourth element. Plaintiff does not allege her position was filled by someone outside her protected class. She instead contends others were treated more favorably in general. Plaintiff's response cites "instances of less favorable treatment" in the form of certain comments by Hill, Weiss's comment regarding whether or not black people washed their hair, and Hill's instructions to house managers not to communicate with Plaintiff. However, Plaintiff testified Hill acted inappropriately toward both minority and non-minority employees (Plaintiff Dep. at 70-71, 244). These examples do not demonstrate "that for the same or similar conduct [Plaintiff] was treated differently than similarly-situated non-minority employees." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992).

Viewing "comparable" in the broadest sense, the Court cannot even consider Plaintiff similarly situated to Hill. Plaintiff claims she was not given the same counseling as Hill for her email to McCord, however, this is mere speculation as Plaintiff does not know how Hill was disciplined (Plaintiff Dep. p. 231). Hill's unprofessional behavior and comments were an entirely different form of misconduct than Plaintiff's refusal to perform job duties, which directly affected clients. Plaintiff further referred to an area director as a "hypocrite" which is an additional distinguishing factor. Because Plaintiff has not put forth any evidence to show males or non-minority females were treated differently for misconduct of "comparable seriousness," Plaintiff's claims of gender and race discrimination fail at the prima facie stage.

Accordingly, summary judgment is appropriate on Plaintiff's gender and race discrimination claims.

### B. Hostile Work Environment

Plaintiff alleges she was subjected to a racially and sexually harassing work environment during her employment with Defendant in violation of Title VII and THRA. Claims of harassment filed under THRA and § 1981 (race), are analyzed under the same standards as Plaintiff's Title VII claims. *Jackson v. Canes Corp.*, 191 F.3d 647, 658 (6th Cir. 1999)*; Parker v. Warren County Util. Dist.,* 2 S.W.3d 170, 172 (Tenn. 1999). To establish a claim for harassment pursuant to Title VII, a plaintiff must demonstrate (1) she is a member of a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her sex or race; (4) the harassment unreasonably interfered with her work performance by creating an intimidating, hostile, or offensive work environment; and (5) Defendant knew or should have known about the harassment, yet failed to take reasonable action to prevent and correct the harassment. *See Thornton v. Fed. Express Corp.*, 530 F.3d 451, 455-56 (6th Cir. 2008); *Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir. 1999).

Not all objectionable conduct rises to the level of actionable harassment. The conduct must be "severe or pervasive enough to create an objectively hostile or abusive work environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993). Title VII "does not create a general civility code for the American workplace." *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 80 (1998). The Court examines the totality of the circumstances to determine whether an environment is hostile or abusive. Factors include "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23. Not only must the conduct be objectively hostile or abusive, the "victim must subjectively perceive the environment to be abusive." *Id.* at 21.

11

Same-sex sexual harassment is actionable and one method of establishing it is by showing harassment motivated by a sexual desire. *Id.* at 81. Plaintiff claims there is a factual issue whether Hill's actions of grabbing Plaintiff's breast, commenting on her body ("shaped like a white girl" or having a "white girl ass"), and pretending to hand Plaintiff her gonads were motivated by sexual desire (Court File No. 25, p. 15). Hill's action of filming Bomar's buttocks with her cell phone while Plaintiff was present could also be viewed as motivated by sexual desire. However, even disregarding Hill's statements these actions were to "lighten the mood" and assuming they were all motivated by Hill's sexual desire, these incidents still do not result in actionable sexual harassment. With the exception of the two comments on Plaintiff's body, the other incidents occurred during the month of January 2009. Hill's conduct was vulgar, unprofessional and inappropriate, however, as soon as Plaintiff reported it to management, Defendant addressed the problem. Plaintiff reported the conduct in February 2009 and it is undisputed McCord counseled Hill and afterwards, Hill's inappropriate sexual comments and advances ceased. The fact Plaintiff would have preferred an alternate course of discipline is beside the point. Here, Defendant's "actions were reasonably calculated to end the harassment" and according to Plaintiff the comments and advances ceased. *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 340 (6th Cir. 2008).

Isolated offhand remarks regarding Plaintiff's body do not rise to the level of severe or pervasive to constitute actionable sexual harassment. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) ("[S]poradic use of abusive language, gender-related jokes, and occasional teasing" are "the ordinary tribulations of the workplace," and as such they do not amount to actionable harassment.). Looking at the totality of the circumstances, the incidents in January 2009 were addressed as Defendant became aware of them, and the stray remarks made in June 2009 would not

12

Case 1:10-cv-00208-CLC-SKL   Document 38   Filed 07/08/11   Page 12 of 19   PageID #: 1274

unreasonably interfere with Plaintiff's work performance and create an intolerable work environment. *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 271 (2001) ("[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious)" do not create that unreasonable interference"); *Grace v. USCAR*, 521 F.3d 655, 679 (6th Cir. 2008) ("occasional comments, which may have been 'offensive utterances,' do not rise to the level required by the Supreme Court's definition of a hostile work environment in *Harris*").

Similarly, Plaintiff's claim of a hostile work environment based on race is not supported by facts demonstrating harassment that is severe or pervasive. Other than Bomar throwing the pen, Plaintiff points to a few isolated comments over a period of a year and an omission from a power point presentation which was promptly corrected. Immediately following Bomar's throwing of the pen, which, according to Plaintiff, may or may not have been racially motivated, Bomar was terminated. Isolated comments over the course of a year, some not even clearly connected to a discriminatory motive, do not rise to the level of "severe or pervasive" to sustain a hostile work environment claim. *Compare Williams v. CSX Transp.* Co., No. 09-5564, --- F.3d--- , 2011 WL 2547561 (6th Cir. June 28, 2011) (describing statements such as calling "Jesse Jackson and Al Sharpton 'monkeys' and saying that black people should 'go back to where [they] came from" as "insensitive, ignorant, and bigoted" but more closely resembling "mere offensive utterances" than severe or pervasive) *and Sweezer v. Mich. Dep't of Corrs.*, 229 F.3d 1154, 2000 WL 1175644 (6th Cir. Aug. 11, 2000) (holding no racially hostile work environment despite egregious discriminatory comments, vandalism of the plaintiff's personal property, physical threats, and derogatory mail); *with Williams v. Gen. Motors Corp.*, 187 F.3d 553 (6th Cir. 1999) (finding hostile work environment where Plaintiff alleged fifteen separate allegations of harassment over a period of a year, denial of

13

overtime, at least one incident of physical contact, and exclusion of the plaintiff from areas of the workplace).

Viewing the totality of the circumstances, Plaintiff's hostile work environment claims are not supported by facts demonstrating racial or sexual harassment was severe or pervasive. Accordingly, the defendant is entitled to judgment as a matter of law.

### C. Retaliation

Plaintiff claims she was terminated in retaliation for engaging in protected activity in violation of Title VII, the THRA, and the TPPA. Plaintiff points to the timing of her termination in connection with her filing of the EEOC complaint and the heightened scrutiny she received after its filing in support of her retaliation claims. Viewing the facts in the light most favorable to the Plaintiff, a fair-minded jury could return a verdict in favor of Plaintiff on these claims. Therefore summary judgment is inappropriate for Plaintiff's retaliation claims under the THRA, Title VII, and TPPA.

#### 1. Title VII and THRA

Since retaliation claims brought pursuant to the THRA are evaluated under the same analytical framework and federal case law as Title VII claims, the Court will analyze these retaliation claims simultaneously under the Title VII framework.[4] *See Wade,* 259 F.3d at 464. To

---

[4]Following *Gossett v. Tractor Supply Co., Inc.*, 2010 WL 3633459 (Tenn. Sept. 20, 2010), Tennessee *common law* retaliation claims are no longer analyzed under the same analytic framework as Title VII and THRA retaliation claims. Plaintiff does not assert common law retaliation in this case and even if *Gossett* could be read to encompass statutory retaliation claims, the summary judgment standard is a procedural rule governed by Fed. R. Civ. P. 56. In *Gossett*, the Tennessee Supreme Court called into question continued application of the McDonnell Douglas burden-shifting framework in state retaliation claims. However, in *Moling v. O'Reilly Auto., Inc.*, 763 F. Supp.2d 956 (W.D. Tenn. 2011), the district court analyzed the relevant issues and concluded that the standard applied at the summary judgment stage is procedural rather than substantive. The district court therefore analyzed the plaintiff's state law retaliation claim using the *McDonnell Douglas*

make out a *prima facie* case of retaliation, a plaintiff must demonstrate: "(1) she engaged in activity protected by Title VII; (2) the defendant knew of the plaintiff's exercise of her protected rights; (3) the defendant subsequently took an adverse employment action against the plaintiff or subjected the plaintiff to severe or pervasive retaliatory harassment; and (4) there was a causal connection between the plaintiff's protected activity and the adverse employment action." *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 516 (6th Cir. 2009). "Protected activity" is activity directed against the specific evils made unlawful by Title VII, such as race and gender discrimination. *See* 42 U.S.C. § 2000e-3 ("It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has . . . participated in any manner in an investigation . . . under this subchapter."); *Barrett*, 556 F.3d at 520 ("With respect to 'protected activity,' the anti-retaliation provision of Title VII protects those who participate in certain Title VII proceedings . . . and those who oppose discrimination made unlawful by Title VII.") (citation omitted).

Plaintiff undisputedly has established the first three elements under both types of retaliation claims. She filed a claim with the EEOC alleging race and gender discrimination while she was an employee of Defendant, Defendant knew she had filed such a charge, and she was subsequently terminated. The parties dispute the fourth element and the Court must determine whether Plaintiff has demonstrated a causal connection between Plaintiff's EEOC charge and her termination on January 7, 2010. In order to establish this element, "the plaintiff must produce sufficient evidence from which one could draw an inference that the employer would not have taken the adverse action

---

framework. This court will also apply the same burden-shifting analysis. *Campbell v. Eagle Bend Mfg., Inc.*, No. 3:10-cv-24, 2011 WL2471493 at *6 n.2 (E.D. Tenn. June 22, 2011); *Shelton v. Techpack Am., Inc.*, No. 2:10-cv-89, 2011 WL 181 3975 at *14 n.3 (E.D. Tenn. May 6, 2011); .

15

against the plaintiff had the plaintiff not engaged in activity that Title VII protects." *Abbott v. Crown Motor Co., Inc.*, 348 F.3d 537, 543 (6th Cir. 2003).

Plaintiff filed her EEOC complaint on October 7, 2009, while on medical leave. In this complaint, she alleges race and sexual discrimination by Hill and other employees of Defendant. Plaintiff returned to work in December 2009 and was disciplined twice by Hill for problems with scheduling the same month. Hill then forwarded an email to members of management on January 6, 2010, and Plaintiff was terminated on January 7, 2010. Generally, "temporal proximity alone does not support an inference of retaliatory discrimination in the absence of other evidence," however, "closeness in time between the filing with the EEOC and the adverse employment action is relevant and may evince the employer's intent." *see Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 582 (6th Cir. 2000). Here, the Court finds the close temporal proximity of Hill's disciplinary actions to Plaintiff's EEOC filing, the allegations against Hill contained in the EEOC charge, and the prompt termination of Plaintiff following Hill's email on January 6, 2010, create an inference Plaintiff's termination was connected to her protected activity. *See Hamilton v. Gen. Elec. Co.*, 556 F.3d 428, 435-36 (6th Cir. 2009) (finding close temporal proximity (less than three months) between plaintiff's allegations of heightened scrutiny by employer and plaintiff's filing of EEOC charge sufficient to "establish the causal nexus" required of a prima facie case).

Once Plaintiff has established a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the termination. *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 563 (6th Cir. 2004). Defendant has satisfied this burden by pointing to Plaintiff's failure to perform an essential function of her job. Defendant contends Plaintiff was terminated because she failed to coordinate holiday schedules with a client's family and failed to

16

coordinate a consumer's medical appointment.

Plaintiff now carries the burden of showing Defendant's proffered reason for her termination is pretext for retaliation. *Spengler v. Worthington Cylinders*, 615 F.3d 481, 492-93 (6th Cir. 2010). Such pretext may be shown by demonstrating "the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Singfield*, 389 F.3d at 564. Once plaintiff has established a prima facie inference of retaliation, district courts are encouraged to exercise caution in granting summary judgment. *Id.* The Court finds Plaintiff has demonstrated issues of material fact that preclude summary judgment on the issue of pretext.

Plaintiff admits she failed to coordinate holiday schedules, however, it is undisputed Plaintiff did not create the December schedules because she was on leave. Viewing the facts favorably to Plaintiff, Plaintiff did not admit she failed to coordinate a medical appointment -instead she claims it was scheduled by someone else and because of an untrained staff member, the client did not make it to the appointment. Plaintiff was on medical leave until early December, during which time it is undisputed others in the office were responsible for scheduling and instructed to only contact Hill with their concerns. Although Plaintiff admits to failing to coordinate a holiday schedule with a family, Plaintiff also claims she did not make the December schedules (Court File No. 25-3, p. 55).

The role Hill played in actions leading up to Plaintiff's termination could further support a jury's finding of pretext. "[W]hen an employer . . . waits for a legal legitimate reason to fortuitously materialize, and then uses it to cover up his true, longstanding motivations for firing the employee, the employer's actions constitutes the very definition of pretext." *Hamilton*, 556 F.3d at 436 (internal quotations omitted). Plaintiff points to inappropriate conduct and comments made

17

by Hill beginning in January 2009. Hill was named in Plaintiff's EEOC complaint, was Plaintiff's immediate supervisor and the one who initiated all disciplinary action in December 2009. Hill was also the one instructing house managers to avoid speaking with Plaintiff. Even though Hill did not technically participate in the decision to end Plaintiff's employment, she was the one who ultimately brought Plaintiff's "insubordination" to the attention of management. Defendant's characterization of Plaintiff's refusal to perform an essential job function is not entirely accurate. Plaintiff's email to Hill indicates she is uncomfortable scheduling medical appointments after the incident for which Hill disciplined her. Plaintiff states she didn't feel comfortable scheduling appointments until after Hill leaves, which Plaintiff thought was in the very near future. Hill forwarded these emails on January 6, 2010, and without any apparent further investigation, Plaintiff was immediately terminated.

Based on the temporal proximity to the EEOC complaint, the role Hill played in Plaintiff's termination, and the disputed facts surrounding Plaintiff's scheduling problems, the Court finds summary judgment is not appropriate on Plaintiff's Title VII and THRA retaliation claims.

### 2. TPPA

To establish a cause of action under TPPA, Plaintiff must show (1) her status as an employee of the defendant; (2) her refusal to participate in, or remain silent about, illegal activities; (3) her termination; and (4) an **exclusive** causal relationship between her refusal to participate in or remain silent about illegal activities and her termination. *Southmayd v. Apria Healthcare, Inc.*, 412 F. Supp. 2d 848, 862 (E.D. Tenn. 2006) (emphasis added). This requires Plaintiff to establish that her filing of the EEOC charge was the sole reason for her termination. *Griggs v. Coca-Cola Employees' Credit Union*, 909 F. Supp. 1059, 1065 (E.D. Tenn. 1995). Courts have recognized that establishing

18

the fourth element is somewhat of a "formidable burden." *Caruso v. St. Jude Children's Research Hosp., Inc.*, 215 F. Supp.2d 930, 937 (W.D. Tenn. 2002).

Here, there are facts in the record that support Defendant's stated reason for termination, "unsatisfactory performance," based on the problems with scheduling. However, at the summary judgment stage, the court views the facts in the light most favorable to the plaintiff. As discussed above, a reasonable jury could find Defendant's reason was pretextual and the exclusive reason for Plaintiff's discharge was in retaliation for her EEOC complaint. Because the facts permit a reasonable person to reach more than one conclusion, the Court concludes it is a matter best reserved for a jury. *Conley v. Yellow Freight Sys., Inc.,* 521 F. Supp.2d 713, 728 (E.D. Tenn. 2007) ("Summary judgment should be granted only when the facts and inferences drawn from those facts permit a reasonable person to reach only one conclusion") (citations omitted).

The Court concludes there are issues of material fact surrounding whether Plaintiff's EEOC claim was the exclusive cause of her termination and will therefore deny Defendant's motion for summary judgment on this claim.

## IV  CONCLUSION

For the above reasons, the Court **DENIES** Defendant's motion with respect to Plaintiff claims of retaliation under Title VII, the THRA, and TPPA. The Court **GRANTS** Defendant's motion as to all remaining claims.

An Order shall enter.

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**